Mr. Corker, everybody take him up on that. Got it. But the final case in which we'll hear oral argument today is number 2008-1456, Health Corp Corporation v. Tanita Corp. And let's see, Mr. Frisenda, you're representing Tanita, correct? No, Health Corp. Health Corp, oh, okay. The good news is we have no plan just to discuss. Okay, well, go ahead then. All right. You've reserved five minutes, correct? Correct. Okay. I'm sorry, I was getting mixed up. There's a cross-appeal here. Yes. I apologize. Sorry. I had that wrong.  Okay, well, you can start whenever you're ready. All right. Your Honors, what the trial court did was to find summary judgment of non-infringement on two separate bases. In order to prevail and reverse the trial court, and the grant was by summary judgment, this court needs to overturn the trial level court on two separate bases. First, the court found that a limitation in a preferred embodiment should be imported into the independent claim one of each of the patents in suit. Well, counsel, there is a means plus function language in there, right? Mounting means for removably attaching electrode sensors to a Kelvin bridge. Is that right? Yes, it is true. What is it? I mean, I hate to tell you this, but they're supposed to import stuff from the spec into the claim when it's a 112.6 situation, right? They've got to bring the structure in. Very true. However, I was referring to subparagraph A, and that is whether or not the positioning of the patient should be imported as a limitation into the claim. Okay, I'm sorry. So you weren't starting on the mounting means limitation. Now I'm with you. Okay. So if the particular aspect of the patent claims accuracy and it determines that accuracy is only if the patient is prone, isn't that really a limitation that can be defined as a specific limitation in the claim? I think that if there was a prosecution history estoppel or if there was, in the background of the invention, a clear effort to carve out some prior art that was perhaps showing some other positioning, some other technique. In this particular case, what we're dealing with is leg-to-leg bioimpedance versus attaching  The implication is if you don't lie down, you don't get an accurate reading. And various practitioners would certainly prefer the best technique, which is that you should avoid noise or you should avoid any type of imperfection in the measuring process. For instance, let's say if we were weighing a pound of hamburger. Obviously, we could just plop it on the scale. We could level the scale. We could zero out the scale. Or we could do certain other preferred methods that would avoid what is referred to as noise in the measurement technique. In this particular case, it's an article or, in other words, an apparatus-type claim and certainly does not require any express positioning of the body in a certain position. For that reason, that is the fact that this is an apparatus or system claim, the positioning of the patient should have no bearing and certainly should not be imported as a limitation from the preferred embodiment. The trial court in one section pointed out that the preferred embodiment also says, do not take measurements directly from the patient. Why is that? Because someone may lie about their age or they may lie about their weight or they may lie about one thing or another. That doesn't mean that becomes a structural limitation to be imported into the claim where there's no other reason to do that. So accuracy certainly is the goal that is strived for, but it is not a situation where the applicant at all disavow any particular positioning of a patient. It did list the preferred positioning. With regard to the subparagraph B, that is the mounting means, and yes, it is a 112, and with regard to the structure that is shown in the patent, for instance, at figure 9, there's a laptop computer that is what is required in the claim subpart B is mounting means such that the readout or one component or another can be removably attached to one another. There is in the figures simply indicated as plug and jack. That is the only reference in the figures to a particular structure, if you will, of the mounting means would be by way of plug or jack. With regard to figure 9, it's inescapable that the computer is in essence the brain to manipulate the data. That is, in this instance, it's a measuring system which takes the measured data and then manipulates it, in this case, a multiple regression analysis, which is contained within the computer. Mr. Persenna, accepting what you say about how the computer works, but I don't understand how that transfers to mounting means for removably attaching. Because the end of that clause is system, and the phrase system means a functionally related group of components. It doesn't move, but still you have to have a mounting means for removably attaching. Yes. That's how the computer meets that, falls within that limitation. It shows the overview, or if you will, the gist, again, of the invention, which is to show the removability. That is, the detaching and attaching of the various components of the system such that it can take the measurements and then compare it up against the known... I would have thought that the means for removably attaching would be depicted in Figures 1 and 2. It is not. It is in Figures 1 and 2, which shows what's called a temporary placement of, in other words, a pad, such that you would use, for instance, an EKG. But that is not what is referred to in Clause B. I think that people have a tendency to look at a picture and say, well, that's a simplification of the claim language or the invention, therefore I must know that it must mean this. I do believe that that is what the district court did, and it did not place the emphasis on mounting means. It placed the emphasis on removable attachment. And then zeroed in on the accused devices and said, well, they're soldered, that is, the various internal components are soldered together, the electrical wires are soldered, therefore it couldn't be removably attached. So I do think that in this particular instance, again, there's no prior art of record. There's no prior art that was sought to be overcome in either the background of the invention or in the prosecution. We have a patent that I believe a fair reading of means that the district court should not have imported those limitations. And did so completely based on oral argument of opposing counsel. Now, if I could turn my attention to the counterclaim, which is the false advertising, again, granted on summary judgment. In that particular counterclaim, what we were dealing with is health court's beta test website. No commercial revenue, not one dollar, of any product, any service, that formed the basis for the cyber care website. That was the accused website. The website was in use for a limited period of time. The records establish by Dr. Lipke that there was absolutely no commercial revenue, nor other promotion in the form of leaflets, advertising, solicitation. And the declaration of Dr. Lipke shows that the website was abandoned. That is, some six months after being set up as a test website. Now, there is no federal law of misrepresentation. And so what we have is a case where Tanita did not show any type of competitive injury. In fact, it amended the counterclaim to indicate that it was not even seeking actual damages. The court did not grant the right of discovery, nor did Tanita allow it, on the issue of competitiveness. The website, that is a beta test website, is no more before this court than some representation or misrepresentation on Facebook. That is, the use in commerce is a conditioned precedent to the standing of Tanita to complain about a competitive website or any website. The second element that must be shown, and was not by Tanita, is any instance of competitive injury. Now, you're into your rebuttal, Mr. Persena. Do you want to... I'll stop. I will reserve. Okay, well, we'll give you your full five minutes. You've gone about four minutes and 30 seconds, so we'll give you your full five minutes. All right. And we'll hear from Tina. Mr. Freed? Yes, I'm here. You reserve two minutes, I guess, for rebuttal if Mr. Persena responds to your cross-appeal, right? Correct, Your Honor. Okay. Please, the court. On the issue of the mounting means for removably attaching the electrode sensors, it's important to focus on what gets attached to what the claim tells us. It's the electrode sensors to a Kelvin bridge bioimpedance meter system. Now, a Kelvin bridge is a resistor network, and it's designed to reduce the effects of lead and contact resistance when you're measuring an unknown with small resistance. So this is not any old connection that this claim is talking about. It's talking about the connection of the sensors to the Kelvin bridge metering system. And there's just no question about it, but these sensors are permanently attached to the Kelvin bridge metering system. They're soldered. They're soldered. Yeah. They're soldered. In your client's device. Yes. Yeah. So we don't have to get to what the means is. So he says, well, it includes – there could be plugs or jacks, but the plugs or jacks aren't the thing that connects the electronic sensor to the Kelvin bridge. Correct. The claim is specific on what must be connected to what. End of story. There's no infringement here. It's a solder connection of the electrodes to the Kelvin bridge metering system. They're soldered to the leads. All right. Now, the second thing is also a grounds for affirming below. This is not a file wrapper estoppel issue. This is a specification disclaimer issue. And the cases of this court say pretty clearly. There are instances where if your specification makes it clear. It's about the prone as opposed to standing. Yes, the prone as opposed to standing. And the court below got it right. They said there's no doubt about it. It says it must be. The whole thing here is accuracy. It must be. You must be processing information from a prone patient. And this claim is replete with other limitations in the claim, including I think it's limitation either D or E, which talk about the processing of the information and what you need to do. And you can't get the quantitative measurement of this patient's body, according to this invention, unless that position is prone. So there's a clear specification disclaimer here. Both the magistrate judge and the district court judge had it correct. Again, non-infringement. Now, I'm going to ask the same question. I saw you in the audience, that last argument. But if I were to decide in favor of you on the means for removably attaching electrode sensor, I don't have to reach patient body issue. Correct. I was ready for that when you were on. I watched the other argument. Okay. But I do think you should reach it. I do think you should decide both in our favor. So now let me get to the false advertising issue. This use in commerce. I mean, use in commerce is associated with trade identity law. All we have to have is a false representation in commerce, not a technical trade identity or trademark use in commerce here. And the cases cited on that point are totally irrelevant. We do have a false representation in commerce. You have to show competitive injury at that point? Well, what you have to do is show competition. Then you have to show a false representation that could affect decisions when you're asking for injunctive relief. If I were asking for damages and at one point in time. Well, you did ask for damages. But then they withdrew. And the amended complaint withdrew that. It's clear on the record. The amended complaint withdrew that. There is no damage claim here. It's solely an injunctive relief claim. And a corrective advertising claim is part of the injunctive relief. So all we have to do under Ninth Circuit law, again, coastal case that we cite in our brief is very clear. There needs to be false commercial speech, which there was here. There's no contest on this appeal. You're talking about Mr. Wooten's educational. Not just that. There were representations about the product, about it being the only patented device that is patented for its accuracy and things like that. There were specific findings below of the falsity of that, as well as Mr. Wooten's education. Given that the district court, magistrate district court, found the case not exceptional, even if we were to reverse and say, well, you know, since it's de novo under Ninth Circuit law, we do find it exceptional. The district court still has the discretion. Don't you think you're going to end up in the same place at the end of the day? I don't think so, Your Honor, because the district court's focus on the exceptional case issue was incorrect as a matter of law. The district court focused on- The district court's the person, though, that heard all these misrepresentations and the one that made the findings that they were, in fact, false. So the district court had all of this bad actor evidence in front of them, and yet they decided not to give you the fees that you were seeking. Well, in the end, if they decide to not give fees for some proper exercise of discretion, then we're back here on whether that's a proper exercise of discretion. But what we're here now on is the law. We have false representations that, on this appeal, must be accepted as false. They're not appealed as not false. We have representations to the court that said that these representations are, in fact, for commercial purposes. We're now talking about the- Are we talking about the exceptional case on the Lanham Act claim, or are we talking about the exceptional case on the patent claim? I was at the exceptional case on 285, but I also said- Okay. I also said under Ninth Circuit law- Yeah, so I wasn't sure where you were. I'm mixing you up. But we have both issues in front of you. On the patent issue, let me address the exceptional case on the patent issue here. The issue here is they brought a claim that they knew or should have known had no substance to it. These things are permanently attached. There's no way a good faith claim could have been brought. They then told the court that you ought to construe this claim in a particular way because of the evidence we're giving you from this person who has these credentials that you should believe. Then they continued to push the case after summary judgment was granted. They filed discovery. They threatened sanctions motions against us. I mean, you can't take these things one at a time. But that's still within the discretion of the trial court as to whether or not it's exceptional. If you look at them all together, what the trial court did is they knocked them down a straw man one at a time, and the proper test is look at every one of these together in combination. You can't just say each one of these alone wouldn't have been enough. The court never addressed the issue of whether all of them together. Are you saying that we should look at all of the elements under 285 and also under the Lanham Act? Well, the Lanham Act is slightly different because the Lanham Act claim is more of a factual issue under Ninth Circuit law. Before you move to the Lanham Act, though, can I ask you, so the district court actually says when granting summary judgment, the magistrate, I should say, because the district court did this without comment, right? They just adopted the magistrate's findings, really. So the magistrate said, you had a stronger argument and you won, but I didn't find that to be frivolous and certainly not brought to be vexed. I disagreed with Mr. Fresenda's position, and so I ruled against him. That seems to be a fact finding that's going to be difficult and a clear error standard of review for us to review. Your Honor, I think the district court was talking about the prone position issue on that one. The patient body issue. Yeah, when it comes to permanently connected, there just is no way that they could justify bringing this patent infringement case. Permanent is not removably attached. End of story. And then to push it after you're told that, to keep the case going after you're told that, to keep taking discovery, to threaten, to bring motions to compel on that basis, when you add that to the false representations made in declarations intended to enforce, intended to tell the court to make a decision a different way because of this testimony, I can't think of a case more exceptional. When you get to the Lanham Act claim, that's an abuse of discretion standard. That clearly is a question of whether or not the discretion was abused here, and here again, the abuse of discretion. Wait, on Lanham Act, abuse of discretion? Let me make sure I'm with you. I thought that we reviewed the exceptionality for de novo under the Lanham Act claim. Am I not wrong? Part of it de novo and part of it on abuse of discretion. It's a little confusing on that issue. Yeah, but it's important. The legal aspect of it, you view de novo, and that's the point where the court had the wrong focus. The court focused on the question of the injury as opposed to the question of whether the act was inappropriate. And the test for whether or not it's exceptional under the Lanham Act isn't the question of the injury and whether people were influenced, necessarily there was any money lost, but whether or not there was a misrepresentation that was intentional and done with the express purpose of putting one over on somebody, which is exactly what this fits. The district court ignored that. You're telling me it's the act, not the injury. That's correct. It's the act, not the injury, and that's why on that issue, that's de novo. The court was wrong. It's an abuse of discretion to then not call it exceptional on that basis because you're applying the wrong legal standard. So that's it in a nutshell. But is that the Ninth Circuit provisions under Gracie? The Ninth Circuit provisions are the ones that apply here, yes. Well, they would apply for the Lanham Act, right? Yes. And you're saying that the district court got those wrong? Yes, they got the Ninth Circuit case wrong. On the basis of what? On the basis of focusing on the injury as opposed to focusing on the misrepresentation, the intentional nature of the misrepresentation and its purpose. That's what they should have been focusing on under Ninth Circuit law, not on the injury. And the district court didn't do that, and that's why the case is exceptional for Lanham Act purposes, exceptional for patent law purposes. There was a Lanham Act violation. There was no infringement. And the court has no further questions. Thank you, Mr. Green. You'll have then about four and a half minutes for your rebuttal if you need it with respect to your cross appeal. Mr. Fresenda? Yes. You have, as I said, you have your full five minutes for your rebuttal, and you may want to address the cross appeal. Yes. Your Honor, the court said during the course of oral argument on the issue of infringement, and this was Teneda's counsel, Mr. Underhill. And I'll give you just a very candid answer. I think the arguments can be made on either side of it. It's definitely a closer question, you know, the court. What's the difference? You're talking about prescriptive language as opposed to somebody suggesting, you know, we're looking at the way somebody back when this was wrote, somebody wanted, quote, preferably, end quote, as opposed to, quote, do not use, end quote, or, quote, this is better. And that's a language you're, Teneda, asking me to construe. So how is it, quote, do not use data supplied, end quote, any more arguable than patient must be prompt. Sounds to me linguistically very similar. The court itself latched on to various, I'll say, preferred methods that were contained in the section, which is description of the preferred embodiment. That is, the summary of the invention, the abstract, the figures, do not show that the patent is limited to patient in a prone position. The turning a victory of non-infringement into a case for exceptional conduct in every instance is not the rule, but as Mr. Wooten was incorrect in terms of his credentials. But that is not a requirement for an inventor that submits a declaration to the court. After it was discovered that Mr. Wooten did not, in fact, have a college degree as opposed to attending courses in college, an amended declaration was submitted, and the court indicated that that declaration was not considered and was felt to be moot. There was another companion declaration from the other co-inventor. You would agree, Mr. Persenna, that is a fairly extreme statement to misrepresent about a college degree. He said he had a college degree. He did not, in fact, have a college degree. And there is no question that it was inaccurate. Was it decisive in terms of the court's consideration? The court, as well as the magistrate, says no. That is, it did not consider the Wooten declaration in one instance or another and regarded it as moot even on a motion to strike the declaration. Counsel suggests that this matter was pressed even after. Reality is that this case was disposed of. That is, the infringement case was disposed of on summary judgment. There were open issues as to the competitive nature of any type of alleged injury on the part of Tanita. That's where the discovery was sought. None of the conduct that arises. Under Ninth Circuit Lanham Act law, are you supposed to look at the injury, meaning do you look only at the lie or misrepresentation and ascertain was it misrepresented, what were they trying to accomplish by it, or do you look at how much negative impact it actually had? You look at competitive injury, not just injury alone. That is, if there was no... To determine exceptionality for purposes of Lanham Act, you look at the competitive injury? I believe that for exceptional nature, you look at the conduct across the board, that is, the full spectrum of the conduct. Well, the conduct, that would imply the act. That wouldn't imply the resultant injury. That's why I'm trying to understand, because Mr. Freed drew a very clear distinction in the Ninth Circuit case law between what the court was supposed to focus on and what he says they did in this case. And that's a legal issue that we would review de novo, so I want to make sure I understand your response. All right. We believe that the issue of standing was first, whether or not Tanita can complain about a Lanham Act claim and have standing under Ninth Circuit law. No, but let's go to the exceptionality thing. I believe you look at the totality of the conduct. It is not limited to commercial injury, as I understand it. The totality of the conduct? I'm trying to understand, was the court supposed to focus only on the acts, or were they supposed to also analyze how much injury was caused as a result of these acts? Like, for example, you know, there are big, fat lies. There are little, white lies. Yes. All of them are still lies. All of them may be made with an intent to deceive the people who you're imparting them to, but big, fat lies might hurt a lot more than the little, bitty ones. I understand. So what are we supposed to do? Are we supposed to, under Ninth Circuit law, look at how much injury there was as a result of the lie, meaning, you know, did you make a lot more sales because Mr. Wooten was a master's degree person as opposed to a high school diploma or not? You know, do we look at the injury, or do we only focus on the fact that you lied, you tried to get something over, you tried to get the American public to buy this, and even if nobody was persuaded, even if it made no difference, is that what we look at for the exceptionality? I'm trying to understand. Okay. And when I say totality, I think you look at both. I don't think that you disregard one or the other. Here it's important that there was no commercial revenue, not $1 of sale, not $1 of profit, not $1 of injury. So that has to go into the mix of factors, and we believe it's significant from a standpoint of standing to begin with. But the totality shows that nobody got, there was no gain, there wasn't any intent to gain because there was no product offered for sale. That is, there was no purchase price, there were no terms of sale, that this was a beta test website that was then shut down. Not shut down in response to this, meaning in response to a lawsuit, but the declaration of Lipke establishes that it wasn't further used from a standpoint of marketing purposes or any commercial gain. Thank you, Mr. Fresenda. Mr. Fried, you have your 4 minutes, 28 seconds if you need for your rebuttal. I think I'll be briefer than that, Your Honor. Thank you. Two points. The colloquy with the counsel below regarding something being a close case was, again, on the prone issue. We shouldn't get confused here. Health Court brought a baseless infringement claim where the claim called for removably attaching electrodes to the Kelvin Bridge when they knew, clearly knew, if they had done any form of investigation which they claimed to have done, that there was a solder connection of those electrodes. That is a baseless claim. They then supported it with a false declaration, and they continued to pursue the patent claim. We have record sites, Your Honor. It wasn't the trademark claim only. It was the patent claim that they continued to pursue and pushed and said, we're going to bring motions to compel. You must give us this patent discovery on this claim that they had already lost. That's an exceptional case, Your Honor. They shouldn't be rewarded for that. And with regard to the Lanham Act claim, again, it is clear that the focus is, in this instance, the amount of injury isn't even part of the claim. It's an exceptional case because the thing that gave rise to the Lanham Act claim was intended for no other purpose other than to influence purchasing decisions on the basis of two kinds of falsehoods, not just the allegation that this gentleman had a BS and an MS and he had no college degrees whatsoever. That was done for the purposes of influencing purchases, but it wasn't just that. It was false statements about the product itself. Again, when you look at those things and what they were trying to do, this is a Lanham Act exceptional case, Your Honor. Counsel, can you give me, what are your best cases for your clear demarcation in the law that the exceptional case focuses exclusively on act to the exclusion of whether there's any injury for Lanham Act purposes? I'm talking long enough to give you a chance to try and find it. Yeah. Because that's a very clear, bright line rule, and I just didn't read the cases so clearly, and I'm hoping maybe you can enlighten me. All right. All right. Earthquake. Earthquake sound is one. These are the cases cited in footnotes 25 and 26 in the red brief, I believe. The Ninth Circuit case is cited there. Okay, so look at those pages of your brief. Yes, and that book is cited there, and the Ninth Circuit case is cited there. And you're going to tell me when I look more closely at them that they're going to clearly draw the same distinction that you've drawn for us? They focus on the act, yes. They focus on the act. And don't discuss at all? And not the injury. They don't discuss at all any level of injury? I won't say they don't discuss at all, but the focus of the case is on the act, Your Honor, I believe. What about the statutory language itself? The statutory language is what we're talking about. It's the willful and deliberate act. But it doesn't require the district court to find exceptional on that basis, does it? Once they make that determination, are they required, are they mandated under the statute to provide for legal fees? No, I do not believe they are. It's still discretion? I think there's a degree of discretion, but you have to focus on the right thing first. A degree? Some discretion? Yes. Maybe even a substantial amount of discretion? There can be, but you have to focus on the right thing before you can exercise that discretion because it's an abuse of discretion when you focus on the wrong thing in the exercise of it. Thank you, Mr. Freed. Again, Mr. Fresenda, thank you. The case is submitted. And that concludes this morning's sitting.